Jordan M. Rand
DILWORTH PAXSON LLP
LibertyView
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002

Maura Fay McIlvain
 (*pro hac vice* admission to be filed)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

**HOLLYWOOD TANS BRANDS, LLC,**
11 Enterprise Court
Sewell, NJ 08080

       **Plaintiff,**

    **v.**

**HT TANS OF HAWTHORNE, LLC,**
1103 Goffle Road
Hawthorne, NJ 07506

**HT TANS OF CLIFTON, LLC,**
525 Piaget Avenue, Rt. 46 East
Clifton, NJ 07011

**TIMOTHY F. CROWLEY,**
23 Skyline Circle
Sewell, NJ 08080

      **Defendants.**

**CIVIL ACTION NO: 11-CV-**

**COMPLAINT AND JURY DEMAND**

## COMPLAINT

Plaintiff Hollywood Tans Brands, LLC ("HT"), by its undersigned counsel, makes the

following allegations in support of its Complaint against Defendants HT Tans of Hawthorne,

LLC ("Hawthorne"), HT Tans of Clifton, LLC ("Clifton") and Timothy F. Crowley ("Crowley") (collectively, "Defendants") as follows:

## THE PARTIES

1.  Plaintiff HT is a Delaware limited liability company with a principal place of business at a principal business address at 11 Enterprise Ct., Sewell, NJ 08080.

2.  Defendant Hawthorne is a New Jersey limited liability company and is a former HT franchisee. Hawthorne's principal place of business is 1103 Goffle Road, Hawthorne, NJ.

3.  Defendant Clifton is a New Jersey limited liability corporation and a former HT franchisee. Clifton's principal place of business is 525 Piaget Avenue, Route 46 East, Clifton, NJ.

4.  Defendant Crowley is, upon information and belief, a principal of both Hawthorne and Clifton. Hawthorne, Clifton and Crowley will, from time to time, be referred to collectively as "Defendants."

## JURISDICTION AND VENUE

5.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367 as this action arises under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.* and the law of federal unfair competition and trademark dilution as well as the state law of trademark infringement, unfair competition and Anti-Dilution.

6.  Venue is properly laid in this jurisdiction pursuant to 28 U.S.C. §§ 1391(b) and/or 1391(c) in that the Defendants regularly conduct business in this District and/or are subject to jurisdiction in this District and because the offending acts alleged occurred in this District.

## BACKGROUND

7.  HT and its affiliates operate a widely known and recognized retail indoor tanning salon franchise and licensing system in the United States.

8.     HT is the uncontested owner of various trademarks and service marks that are on the principal register of the United States Patent and Trademark Office (Reg. Nos. 2,228,843; 2,492,716; 2,590,596; 2,725,161; 3,074,282; 3,504,965; 3,505,164; and 3,541,626), logos and derivations thereof (the "HT Marks"), as well as the distinctive HOLLYWOOD TANS® system, which relates to the establishment, development and operation of HOLLYWOOD TANS® salons, including HT's unique methods, proprietary tanning equipment and tanning lotions, technical assistance and training in the operation, management and promotion of the HOLLYWOOD TANS® franchise.

9.     HT's registration for the HT Marks are active and in good standing, are valid, subsisting and incontestable, and are conclusive evidence of HT's exclusive right to use the HT Marks in connection with the services specified in the Registrations.

10.    HT and/or its predecessors have continuously used each of the HT Marks at least since the date of their registration, and these registrations are in full force and effect pursuant to 15 U.S.C. § 1065.

11.    HT and/or its predecessors have given notice to the public of the registration of the HT Marks as provided in 15 U.S.C. § 1111.

12.    HT and its predecessors and affiliates are, and have been for many years, engaged in extensive advertising and sale of a wide variety of services and products and in connection with those services and products has continuously used in interstate commerce the HT Marks in connection with these services and products.

13.    In addition, HT has garnered substantial rights in the HT Marks by virtue of its extensive use of the HT Marks and related names and marks, in connection with its services and products.

3

14.     Through its franchise and licensing system, HT and its affiliates market, promote and provide services to retail indoor tanning salon franchisees/licensees throughout the United States.   In order to identify the origin of their tanning salon services, HT allows its franchisees/licensees to use the HT Marks and to promote the HOLLYWOOD TANS® brand name.

15.     Substantial effort and capital have been invested over a long period of time to develop goodwill in the trade names and service marks to cause customers throughout the United States to recognize the HT Marks as distinctly designating tanning salon services originating from one source, and the goodwill associated with the HT Marks is substantial.

16.     The HT Marks are famous in the United States.

**DEFENDANTS' CONTINUED USE OF HT MARKS DESPITE TERMINATION OF FRANCHISOR/FRANCHISEE RELATIONSHIPS**

17.     On or about March 2, 2007, HT's predecessor, Hollywood Tanning Systems Inc. entered into a franchise agreement with Clifton ("Clifton Franchise Agreement").

18.     Thereafter, Clifton began to operate, and has operated continuously since that time, an indoor retail tanning salon under the proprietary name, "Hollywood Tans," at 525 E. Route 46 Piaget Avenue, Clifton, New Jersey 07011.

19.     On information and belief, in or about 2002 HT also entered into a franchise agreement with Hawthorne ("Hawthorne Franchise Agreement").

20.     Thereafter, Hawthorne began to operate, and has operated continuously since that time, an indoor retail tanning salon under the proprietary name, "Hollywood Tans," at 1103 Goffle Road, Hawthorne, New Jersey 07506.   The Clifton Franchise Agreement and the Hawthorne Franchise Agreement will hereafter be referred to as the "Franchise Agreements."

21.     On May 25, 2010, HT's franchising affiliate notified Clifton that it was in default under the Clifton Franchise Agreement, and HT therefore gave notice that said Agreement would be terminated in 60 days (the "Clifton Notice of Termination").   A true and correct copy of the Clifton Notice of Termination is attached as Exhibit "A."

22.     Also on May 25, 2010, HT's franchising affiliate notified Hawthorne that it was in default under the Hawthorne Franchise Agreement, and HT therefore gave notice that said Agreement would be terminated in 60 days (the "Hawthorne Notice of Termination").   A true and correct copy of the Hawthorne Notice of Termination is attached as Exhibit "B."

23.     Thus, on or about July 25, 2010, the Franchise Agreements were terminated.

24.     Following termination of the Franchise Agreements, Clifton and Hawthorne nonetheless have continued to operate and/or falsely represent themselves as HT franchisees and have continued to utilize the HT Marks.

25.     Specifically, Clifton and Hawthorne engaged in the following unlawful conduct:

a.      Clifton and Hawthorne continued to display, and, upon information and belief continues to display, exterior signage reading: "HOLLYWOOD TANS" and bearing the HT Marks;

b.      Clifton and Hawthorne continued to market, and, upon information and belief, continues to market, HT's lotion and moisturizer products bearing the HT Marks;

c.      Clifton and Hawthorne continued to use, and, upon information and belief, continues to use, HT's HT60 tanning booths and spray tanning booths bearing the HT Marks;

  d.  Clifton and Hawthorne continued to use, and, upon information and belief, continues to use, informational and promotional materials bearing the HT Marks;

  e.  Clifton's and Hawthorne's employees continued to wear, and, upon information and belief, continue to wear, shirts bearing the HT Marks; and

  f.  Clifton's and Hawthorne's employees continued to answer the telephones at each location by identifying the location as "HOLLYWOOD TANS."

26. On information and belief, Crowley personally participated in and/or directed Clifton's and Hawthorne's illegal use of HT Marks.

27. Defendants improperly and illegally use the HT Marks to induce the public to patronize their salons by operating and representing themselves to the public as HT's franchisees.

28. Defendants are directly in competition with HT and its 30 franchisees/licensees in New Jersey.

29. Public confusion is therefore unavoidable between the Defendants' salons and the HT Marks for indoor tanning salons and services based on Defendants' use of the HT Marks.

30. On or about September 14, 2010, HT sent written notice to Clifton stating that Clifton was unlawfully using the HT Marks as the Clifton Franchise Agreement had been terminated and demanding that Clifton cease such unlawful use of the HT Marks. A true and correct copy of said Notice is attached as Exhibit "C."

31. Clifton nonetheless continued to operate and/or falsely represent itself as an HT franchisee unlawfully utilizing the HT Marks

32.     On or about September 14, 2010, HT sent written notice to Hawthorne stating that Hawthorne was unlawfully using the HT Marks as the Hawthorne Franchise Agreement had been terminated and demanding that Hawthorne cease such unlawful use of the HT Marks.  A true and correct copy of said Notice is attached as Exhibit "D."

33.     Hawthorne nonetheless continued to operate and/or falsely represent itself as an HT franchisee unlawfully utilizing the HT Marks

34.     Every day that Defendants continue to promote their salons using the HT Marks, the public is actively deceived into believing that there is an association between Defendants and the HT Marks, and that belief has and will continue to cause damage to HT's valuable and exclusive rights in the HT Marks.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT

35.     HT incorporates the foregoing allegations as if fully stated herein.

36.     The HT Marks are valid and protectable marks registered on the Principal Register of the United States Patent and Trademark Office under incontestable United States Service Mark Registration Nos. 2,228,843;  2,492,716;  2,590,596;  2,725,161;  3,074,282; 3,504,965; 3,505,164; and 3,541,626.

37.     Through extensive efforts by HT, its HT Marks have come to have significance in the mind of the relevant trade and purchasing public as an indicator of services originating with, sponsored by, or otherwise associated with HT.

38.     The acts of Defendants complained of herein are intended to cause and are likely to cause confusion, or to cause mistake, or to deceive the purchasing and consumer public and others whereby purchasers, comsumers and others would be led to mistakenly believe that

Defendants are associated with, related to, sponsored by, or connected with HT or the HT Marks in violation of 15 U.S.C. § 1114(1)(a).

39.    Defendants' services and products are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are HT's services and products.

40.    Defendants' services and products are offered or delivered through the same or similar channels of trade as are HT's services and products.

41.    HT has not authorized or consented to Defendants' activities as alleged herein.

42.    By unlawfully adopting HT Marks and using same in commerce, Defendants are deliberately deceiving and confusing customers and potential customers into mistaking Defendants' services and products with HT's services and products.

43.    By the acts complained of herein, Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to HT in violation of 15 U.S.C. § 1114(1)(a), et seq.

44.    HT has no adequate remedy at law.  The Defendants' conduct has caused and if not enjoined, will continue to cause irreparable damage to the rights of HT, its HT Marks, and in its business, reputation and goodwill.

## COUNT II

## FEDERAL UNFAIR COMPETITION

45.    HT incorporates the foregoing allegations as if fully stated herein.

46.    The HT Marks are valid and protectable marks registered on the Principal Register of the United States Patent and Trademark Office under incontestable Unites States Service Mark Registration Nos. 2,228,843;  2,492,716;  2,590,596;  2,725,161;  3,074,282; 3,504,965; 3,505,164; and 3,541,626.

47.     Through extensive efforts by HT, its HT Marks have come to have significance in the mind of the relevant trade and purchasing public as an indicator of services originating with, sponsored by, or otherwise associated with HT.

48.     Defendants' services and products are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are HT's services and products.

49.     Defendants' services and products are offered or delivered through the same or similar channels of trade as are HT's services and products.

50.     HT has not authorized or consented to Defendants' activities as alleged herein.

51.     By unlawfully adopting HT Marks and using same in commerce, Defendants are deliberately deceiving and confusing customers and potential customers into mistaking Defendants' services and products with HT's services and products.

52.     The acts of Defendants complained of herein constitute use of a false designation of origin which is likely to cause confusion, mistake or deception as to origin, sponsorship or approval of Defendants' services, or commercial activities, and/or that HT and Defendants are affiliated, connected to, or associated with each other, in violation of Section 43(a)(1)(A) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).   The acts of Defendants complained of herein also constitute an attempt to trade on the goodwill that HT has developed in the HT Marks over more than 10 years, all to the damage of HT.

53.     The actions of Defendants alleged herein constitute the use of a false or misleading description of fact and/or a false or misleading representation of fact in commercial advertising or promotion, misrepresenting the nature, characteristics and/or qualities, or origin or its services or activities in violation of Section 43(a)(1)(B) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1125 (a)(1)(B).

54.     As a result of Defendants actions, Defendants have caused HT substantial irreparable harm and injury to HT's rights and its HT Marks as well as to its business, reputation and goodwill.

55.     HT has no adequate remedy at law.  HT will continue to suffer damages as a result of Defendants' actions unless Defendants are enjoined and restrained.

**COUNT III**

**FEDERAL TRADEMARK DILUTION**

56.     HT incorporates the foregoing allegations as if fully stated herein.

57.     The HT Marks are famous and are associated exclusively with HT.

58.     Defendants have willfully continued to use the HT Marks despite termination of the Franchise Agreements.

59.     Defendants' unlawful use of the HT Marks is likely to lead customers and potential customers to believe, in error, that services and products offered by Defendants are the services and products offered by HT.

60.     The acts of Defendants complained have or are likely to cause dilution of the distinctive quality of the HT Marks, in violation of 15 U.S.C. § 1125(c).  The acts of Defendants complained of herein also constitute an attempt to blur the differences between HT and Defendants, the result of which is to tarnish the HT Marks.

61.     HT has no adequate remedy at law.  Defendants' actions have caused HT irreparable harm and injury and will continue to do so unless this Court restrains and enjoins Defendants from engaging in further violations of HT's rights.

**COUNT IV**

**STATE LAW TRADEMARK INFRINGEMENT**

62.     HT incorporates the foregoing allegations as if fully stated herein.

10

63.     The HT Marks are valid and protectable marks.

64.     Through extensive efforts by HT, its HT Marks have come to have significance in the mind of the relevant trade and purchasing public as an indicator of services originating with, sponsored by, or otherwise associated with HT.

65.     The acts of Defendants complained of herein are intended to cause and are likely to cause confusion, or to cause mistake, or to deceive the purchasing and investing public and others whereby purchasers, investors and others would be led to mistakenly believe that Defendants are associated with, related to, sponsored by, or connected with HT or the HT Marks.

66.     Defendants' services and products are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are HT's services and products.

67.     Defendants' services and products are offered or delivered through the same or similar channels of trade as are HT's services and products.

68.     Defendants' acts of infringement of the HT Marks have been committed within the jurisdiction of this Court.

69.     Defendants' actions constitute state law infringement of the HT Marks under N.J.S.A. §56:4-1.

70.     HT has no adequate remedy at law.   Defendants' actions have caused HT irreparable harm and injury and will continue to do so unless this Court restrains and enjoins Defendants from engaging in further violations of HT's rights.

## COUNT V

## STATE LAW UNFAIR COMPETITION

71.     HT incorporates the foregoing allegations as if fully stated herein.

72.     The HT Marks are valid and protectable marks.

73.     Through extensive efforts by HT, its HT Marks have come to have significance in the mind of the relevant trade and purchasing public as an indicator of services originating with, sponsored by, or otherwise associated with HT.

74.     Defendants' services and products are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are HT's services and products.

75.     Defendants' services and products are offered or delivered through the same or similar channels of trade as are HT's services and products.

76.     By unlawfully adopting HT Marks and using same in commerce, Defendants are deliberately deceiving and confusing customers and potential customers into mistaking Defendants' services and products with HT's services and products.

77.     The acts of Defendants complained of herein, which were committed with the intent to deceive the public are likely to confuse, mislead and/or deceive the relevant public as to origin, sponsorship or approval of Defendants' services, products or other commercial activities and/or that HT and Defendants are affiliated, connected to, or associated with each other in violation of N.J.S.A. § 56:4-1.

78.     The actions of Defendants alleged herein constitute the willful use of a false and misleading description or misrepresentation of fact as to the nature, characteristic and quality of their services with the intent to deceive the public in violation of N.J.S.A. § 56:4-1

79.     Defendants' conduct has caused substantial and irreparable injury to the rights of HT and its HT marks and to its business, reputation and goodwill.

80.     HT has no adequate remedy at law.  HT will continue to suffer damages as a result of Defendants actions, unless this Court restrains and enjoins Defendants from engaging in further violations of HT's rights.

<u>COUNT VI</u>

<u>**NEW JERSEY TRADEMARK DILUTION**</u>

81.    HT incorporates the foregoing allegations as if fully stated herein.

82.    The HT Marks are valid and protectable marks.

83.    Through extensive efforts by HT, the HT Marks have come to have significance and are famous, at least within the State of New Jersey, in the mind of the relevant trade and purchasing public as indicators of services and products originating with, sponsored by, or otherwise associated with HT.

84.    Defendants have willfully continued to use the HT Marks despite termination of the Franchise Agreements.

85.    Defendants' unlawful use of the HT Marks is likely to lead customers and potential customers to believe, in error, that services and products offered by Defendants are the services and products offered by HT.

86.    The acts of Defendants complained have or are likely to cause dilution of the distinctive quality of the HT Marks, in violation of N.J.S.A. § 56:3-13.20.

87.    The acts of Defendants complained of herein also constitute an attempt to blur the differences between HT and Defendants, the result of which is to tarnish the HT Marks. Defendants' actions also constitute an attempt to trade on the goodwill that HT has developed in the HT Marks over more than 10 years, all to the damage of HT.

88.    Defendants' conduct has caused substantial and irreparable injury to the rights of HT and its HT marks and to its business, reputation and goodwill.

89.    HT has no adequate remedy at law.   Defendants' actions have caused HT irreparable harm and injury and will continue to do so unless this Court restrains and enjoins Defendants from engaging in further violations of HT's rights.

13

**WHEREFORE**, HT respectfully demands that this Court enter judgment in its favor and against Defendants and enter an Order:

A.      Preliminarily until final judgment, and permanently thereafter, enjoining Defendants, their principals, officers, agents, servants, employees, attorneys, subsidiaries, divisions, successors and assigns and all those in active concert or participation with Defendants who receive actual notice of the injunction by personal service or otherwise, from:

1.      any use of the HT Marks, name, logo, tradename, or any other similar usage in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, import, export or distribution of any production, service or event offered by Defendants;

2.      using any unauthorized simulation, reproduction, counterfeit, copy or colorable imitation of the HT Marks, including without limitation any form of "HOLLYWOOD TANS" or "HT" in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, import, export or distribution of any product, service or event, in such fashion as to falsely relate or connect, or tend to falsely relate or connect, such products, services or events in any way to HT or the HT Marks;

3.      engaging in any other activity constituting an infringement of the HT Marks or HT's rights in or to use or to exploit the same.

B.      Finding that Defendants have infringed HT's trademark and service mark rights and have damaged HT's goodwill by the acts complained of herein.

C.      Finding that Defendants have unfairly competed with HT by the acts complained of herein.

D.     Ordering Defendants to deliver up for destruction or otherwise, within five (5) days of the date of the entry of an Order for permanent injunction, all articles, displays, advertisements, packaging, brochures, catalogues, products, business correspondence including cards and all other material in their possession or control or in the possession or control of their agents and all those in active concert or participation with Defendants, which bear HT marks, or relate to imitative marks, designations and colorable imitations thereof or those confusingly similar to HT Marks.

E.     Awarding HT monetary relief in an amount fixed by the Court in its discretion as sound and just, including Defendants' revenues or gains of any kind resulting from its acts of willful trademark infringement, trademark dilution and unfair competition, said amount to be trebled in light of the willful and deliberate nature of Defendants' conduct.

F.     Awarding HT costs, expenses and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a) and New Jersey law.

G.     Granting HT punitive damages under New Jersey law.

H.     Ordering Defendants to compensate HT for the advertising and other expenses necessary to dispel any confusion caused by Defendants' infringement, unfair competition or other unlawful acts;

I.     Ordering Defendants to post and prominently display signs for ninety (90) consecutive days in each of their places of business and on their internet websites, indicating that Defendants are not associated with HT or any of its affiliates and stating that Defendants are not permitted to carry, sell or provide any products manufactured, sold of provided by, and are otherwise not affiliated with, HT;

J.      Directing Defendants to file with this Court and serve on counsel for HT within thirty (30) days after entry of said Order a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of the Court's Order.

K.      Granting HT such other relief as the Court deems just and proper.

## LOCAL RULE 11.2 CERTIFICATION

The undersigned certifies that the matter in controversy is not the subject of any other action pending in any court, arbitration or administrative forum.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all of the foregoing issues.

Respectfully submitted,

s/ Jordan M. Rand
_____
Jordan M. Rand
DILWORTH PAXSON LLP
LibertyView
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002

Date: January 7, 2011

Maura Fay McIlvain
(*pro hac vice* admission to be filed)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102